(C. D. 1119)

STANDARD SYNTHETICS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 21, 1948)

*John D. Rode* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Guy G. Ribaudo* and *Richard F. Weeks*, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: The plaintiff in this case imported into the United States two cases containing an oil invoiced as labdanum oil, and entered the same for duty at the rate of 12½ per centum ad valorem under the provision in paragraph 58 of the Tariff Act of 1930, as modified by the French Trade Agreement, T. D. 48316, for "all other essential and distilled oils not specially provided for." The merchandise was classified by the collector under the provision in paragraph 60 of the same act, as modified by the same trade agreement for—

Perfume materials: All mixtures or combinations containing essential or distilled oils, or natural or synthetic odoriferous or aromatic substances * * * *

and assessed with duty at the rate of 40 cents per pound and 30 per centum ad valorem. The present protest was filed by the plaintiff-importer, claiming classification and assessment of duty under paragraph 58, as amended, *supra*.

Upon the trial of the issue the plaintiff offered in evidence the deposition of one Enrique Guttmann of Benicarlo, Spain, technical director of the producer and exporter of the involved oil. The witness was evidently well-qualified by training and experience as a chemist in the production of essential oils, and stated in response to direct interrogatories that he was familiar with the oil covered by the invoice the subject of the present protest. The raw material from which the said oil was produced, he said, consisted of leaves and stems of the plant *Cistus ladaniferus*, and he described the process of manufacture as follows:

The manufacture is very simple. It consists in the distillation by vaporization of water from the said leaves and stems, that is the leaves and stems are placed in a distillation still installed in the field where the plant is gathered, water being added, and by direct heating the water contained in the still is distilled, and in the form of vapor carries the essential oil of the plant. The oil thus obtained is submitted to a simple rectification by distillation.

He further stated that no impurities or adulterants were added to the original raw material in the process of manufacture or production

of said oil; that the process described is the usual process employed in the manufacture or production of said oil; that the said oil was essential oil of *Cistus ladaniferus*, and not a mixture or combination; and that the characteristics of essential and volatile oils vary slightly, depending upon the season of the year in which the plant is picked or cut, whether it has been distilled in a fresh or dry state, and whether obtained in winter or in summer.

In response to cross-interrogatories, the witness stated that the distillation of the crude oil in question was made in the province of Valencia, Spain, by the exporting firm's personnel and for its account; that he had personally supervised the rectification of the crude oil at the Benicarlo factory, "in which state [presumably the rectified state] it was analyzed by me and found to be of irreproachable quality."

The witness further stated that he knew of no accepted standards for labdanum oil, but recognized Gildemeister and Hoffman as authorities for the identification of labdanum oils.

It is the contention of the defendant "that the plaintiff failed to negative the finding of the collector that the imported material was not labdanum oil but, on the contrary, that it was a mixture." In this connection, it is pointed out that on his own statement the witness Guttmann had no personal knowledge of the distillation which resulted in the crude oil, but was personally familiar only with the rectification thereof. We are of the opinion, however, that a fair appraisal of the witness' testimony, and considering his experience in the field as well as the fact that he had personally analyzed the finished product, leads to the conclusion that the plaintiff established that the imported product was nothing more than an essential oil, to wit, labdanum oil, and that it was not a mixture or combination of the types provided for in paragraph 60, *supra*. Thus the plaintiff made out a *prima facie* case which overcame the presumption of correctness attending the collector's classification and affirmatively established the correctness of its claim for classification under paragraph 58, and shifted the burden of going forward with the evidence to the defendant.

The defendant sought to meet this burden by the testimony of Dr. Harold B. Mead, a Government chemist of long training and experience in the analysis of various products, including volatile and essential oils. Besides his familiarity with the literature on labdanum oil, Dr. Mead had examined samples from approximately six shipments of labdanum oil covered by other importations in a period of some 8 years. He tested a sample of the merchandise here involved for density, optical rotation, color, and odor, and found differences beyond the normal variation of labdanum oil as he knew it from

study of the literature and experience with other shipments, from which he concluded that the product was not labdanum oil. He was, however, unable to identify the imported product further, and reported (exhibit 1) that it "is either a distilled or essential oil n. s. p. f., or a mixture of aromatic or odoriferous substances."

It also appeared that certain correspondence developed between the customs authorities and the importer concerning the identification of the merchandise in question, and Dr. Mead testified that—

> The importer was advised that if he would supply an herb from which could be obtained an oil comparable to the importation, they would be then judged to be labdanum oil. Some herbs were received, presumably from the shipper, Adrian-Klein, purporting to be cistus ladaniferus. It appeared to be, to me. That herb I distilled, obtained an oil, and, according to the information that we had as to how the oil was produced by the importer, I refined it. (R. 31.)

The record contains certain details as to the results found by Dr. Mead upon testing the product so derived, and as to the results of his tests upon a sample of the imported product. We deem it unnecessary to go further into such details beyond noting that there is considerable variance between Dr. Mead's findings upon testing the imported product and the product he distilled from the herbs supplied to him, and that neither of these two sets of findings is in complete agreement with physical characteristics reported for labdanum oil by authorities such as E. J. Parry in his work "The Chemistry of Essential Oils and Artificial Perfumes" (4th ed., 1921) and Gildemeister and Hoffmann's "The Volatile Oils" (2nd ed., 1922), or those supplied by the witness Guttmann in response to cross-interrogatories.

It would appear to be impossible to attempt to reconcile the differing results and findings or to draw any conclusions therefrom except to say that there do not appear to be any well-recognized standards for labdanum oil, and it is quite possible that variations in the commercial product occur by reason of the use of different parts of the plant, the state—with respect to freshness—of the parts used, and the season of the year in which gathered and distilled.

On the entire record, it appears that the plaintiff has established that no impurities or adulterants were used in the production of the imported essential oil; that it was not mixed or combined with anything else; and that the defendant has not disproved these facts, but, on the contrary, both Dr. Mead's testimony and his report virtually admit that his findings were compatible with identification of the imported product as a distilled or essential oil such as is provided for in paragraph 58 under which plaintiff's claim is made.

The claim in the protest for duty at the rate of 12½ per centum ad valorem under paragraph 58, as amended, *supra*, is therefore sustained, and judgment will issue accordingly.